# Clark's Case.

1. *In England* the general rule is to allow the costs of a commission of *lunacy* out of the estate of the lunatic, if the lunacy *be established.*

2. But if the party be found not to be a lunatic, or if the commission be superseded before any part of the property vest in the crown, no costs will be allowed to the party taking it out. This result is for *want of jurisdiction.*

3. But in Pennsylvania, under the constitutional provision giving the Supreme Court and Common Pleas the power of a Court of Chancery in relation to the persons and estates of those who are *non compos mentis;* and under the Acts of 13th June, 1836, and of 16th April, 1849, in relation to commissions of lunacy, the Court have control over the costs of such proceeding, and may decide who shall pay them, or may apportion their payment among the parties interested.

[Clark's Case.]

4. The Court of Common Pleas, where there is no certificate, as provided by the Act of 1836, that there was not *probable cause* for the application, may direct the payment of the costs by the lunatic *before the proceeding is determined;* such order, however, being but interlocutory will not prevent the Court from directing reimbursement, or making a different decree on the determination of the case.

CERTIORARI to the Common Pleas, *Philadelphia,* in the matter of Lewis Clark.

A commission of lunacy was sued out on 3d October, 1850, against Lewis Clark. It was alleged, on the paper-book, that, owing to the absence of two of the jurors, the jury, on the application of the petitioners, was discharged on the 28th January, 1851, and a new jury was summoned. On 22d February, 1851, an application, on behalf of the said Lewis Clark, was made to the Court to vacate the order of 28th January. The Court refused to do so, and the case was proceeded in before the new jury.

On 29th May, 1851, the commissioner reported that the jury were unable to agree as to the sanity or insanity of the said Lewis Clark.

A rule was asked (the date not stated on the paper-book) by counsel, representing, as it was stated, the commissioner and *three* of the jury, upon Anne G. Clark and others, on whose application the commission had issued, to show cause why the costs of the inquisition should not be paid.

On 7th May, 1853, the Court ordered that the expenses of the proceeding be paid by the said Lewis Clark. The bill filed amounted to $860, not including the fees of the other jurors or the witnesses.

From the decree Lewis Clark appealed.

The exceptions were, 1. The Court erred in deciding that the expenses of the proceeding be paid by the said Lewis Clark. 2. In making a decree as to the costs whilst the proceeding was pending and undetermined.

By the 1st section of the Act of 13th June, 1836, relating to lunatics and habitual drunkards, it is enacted that, "It shall be lawful for any Court of Common Pleas of this Commonwealth, to issue a commission in the nature of a writ *de lunatico inquirendo, as heretofore practised and allowed,* &c.

By the 8th section of that Act, in cases where a party, alleged to be a lunatic, has no estate, or his estate is so small that the costs of the inquisition will be found an undue burden, the Court may direct an inquest to be impannelled from the jurors attending the Court, &c., to be held by one of the judges.

Section 9. If, upon such inquisition, it shall be found that the party, with respect to whom the application was made, is not

a lunatic or habitual drunkard, and it shall appear to the judge holding such inquisition, that there was not probable cause for such application, he shall certify the same on such inquisition, and thereupon the party by whom such application was made, shall be liable for the *costs* of the proceeding, &c.

Section 10. Every commissioner shall be allowed such reasonable sum for his services as the Court shall allow and direct.

By the 2d section of the Act of 16th April, 1849, it is enacted that "it shall be the duty of the Court of Common Pleas, out of which any commission in the nature of a writ *de lunatico inquirendo*, to inquire into the lunacy or habitual drunkenness of any person within the Commonwealth, shall hereafter issue, to decide and direct who shall pay all costs attendant upon the issuing and execution of said commission, or to apportion said costs and the payment of them among the parties interested, in such proportions as the justice of the case may require, and to order and decree payment accordingly," &c.

*Markland*, for the appellant.—It was said that costs were not recoverable at common law, and that the petitioners, in this case, were responsible for them. That, by the Act of 16th April, 1849, it was made the duty of the Court to decide who shall pay the costs in a proceeding in lunacy, or to apportion them among the parties interested. That this Act was not intended to give the Court an arbitrary power over the costs, but was rather intended for *the protection* of the lunatic. In general, costs are paid out of the estate of the lunatic, where he is found to be *non compos mentis*: *Shelford on Lunacy* 103–105; but persons vexatiously opposing the commission may be made to pay costs: *Id.* 105. Where the party is found to be of sound mind, the costs of the solicitor are to be paid by the person who employs him.

.But, it was said, at all events, Clark should not be adjudged to pay *all* the costs.

2. It was contended that there was nothing in the Act of 1849 which authorized the Court to decree that Clark should pay the costs *before the proceeding was determined*. Till then it cannot be ascertained what the costs will be, or what may be the conduct of the parties concerned, or even who they may be. That no witnesses have presented any claims—the only claimants are officers of the Court.

*Parsons*, contrà.

The opinion of the Court was delivered by

LEWIS, J.—*In England* the general rule has been to allow the costs of a commission of lunacy out of the estate, if the lunacy be

[Clark's Case.]

established: 1 *Collinson on Lun.* 461.   And, notwithstanding what is said in Ex parte Wright, 2 *Ves. Sen.* 25, it is laid down by Mr. Collinson that even the next of kin who attend to propose committees, or to the passing of the accounts, are now allowed their costs as a matter of course.   This is upon the ground that the whole proceeding is for the benefit of the *non compos*, and justice therefore requires that the costs should be allowed out of his estate: 1 *Collin. on Lun.* 308, 462; *Beames on Costs* 337. But if the lunacy be not established by the inquisition, or if, upon traverse, the party be found not a lunatic at the time of the commission issuing, or it be superseded before any part of the property vest in the crown, no costs will be allowed to the party taking it out, however meritorious his intention; for the reason that there is no fund in the hands of the Chancellor out of which the costs can be taken, and it was supposed that there was a want of power to compel the payment by the ordinary process of Chancery: 5 *Ves. Jun.* 832.   That this result is not in accordance with the justice of the case, but proceeds from a mere want of jurisdiction, is apparent from what fell from Lord Chancellor Loughborough, in Ferne, ex parte, 5 *Ves. Jun.* 833.   "If I could act *cum imperio*," says the Lord Chancellor, "it is a very proper case; and the parties have entitled themselves to all the costs I can give them; but I have *no jurisdiction*."   In Sherwood *v.* Sanderson, 19 *Ves. Jun.* 280, Lord Eldon referred to the special and limited authority of the Chancellor, who acts, in lunacy cases, not *as Chancellor*, but under the *special warrant* of the crown, authorizing him to take care of those who are not able to take care of themselves; and he lamented, as his predecessor had done, his inability to give costs, after the care taken and expense imposed from very proper motives for the benefit of the alleged lunatic.   But in that case it happened, that the Chancellor, as Chancellor, had the control of a portion of the funds of the party, awaiting, as was not unusual in the time of Lord Eldon, his decision in a cause then pending.   The justice of the case was so undeniable that he ordered all the costs to be paid out of that fund; and this order was made before the proceedings were brought to an end, and before it was ascertained whether the person for whose benefit they were carried on was a lunatic or not: 19 *Ves. Jun.* 290.

But *in Pennsylvania* we have no occasion to lament the want of power to do justice.   The Courts here have, by the constitution, the power of a Court of Chancery in cases of that kind.   By the Act of 13th June, 1836, they have the power to proceed " as theretofore practised and allowed" in such cases, and where it is found by inquisition that the party with respect to whom the application was made is not a lunatic, and there is a certificate from the judge holding the inquisition that "there was not probable cause for the

[Clark's Case.]

application," the party who instituted the proceeding is liable for the costs. In addition to this, the Act of 16th April, 1849, gives full power over the costs in these cases. Under that Act the Court may decree either party to pay *all* the costs, or may "apportion them among the parties interested, in such proportions as the justice of the case may require," and may "order and decree payment accordingly:" *Brightly's Dig.* 551.

There was therefore no want of power in the Common Pleas to make the decree complained of. As there was no certificate that the application was made without probable cause, there was nothing on the record to control the discretion of the Court, and to make it obligatory to order the party applying for the commission to pay the costs. There was nothing contrary to equity in making the order for payment of the costs pending the proceedings. On the contrary, the justice of the case may frequently require such an order. This order is not a final decree. It is merely an interlocutory order providing for the present payment of expenses incurred, and does not prevent the Court from making a different disposition of the question upon the final decree. If the justice of the case requires it, the party charged with the payment of costs under an interlocutory order, may be reimbursed under the final decree.

In this case, the costs claimed amount to $860. We have no means of judging of the propriety of the charges. The items are not stated on the paper-book. But the practice of allowing very high costs in these cases has been condemned as one which the Court should guard against with vigilance : *Highmore on Lunacy* 78. If the final result proves that there was no cause for the application, it is certainly wrong to lay a heavier burthen upon the object of it than the necessity of the case requires; and if, on the other hand, the application should be well founded, it is contrary to all the feelings of benevolence which prompt the public interference, to aggravate a family already distressed by such a visitation as lunacy, by diminishing, unnecessarily, their resources of comfort : *Highmore on Lunacy* 78.

As the proceeding is always intended for the benefit of the alleged lunatic, the presumption, in the absence of evidence to the contrary, is, that those who commence and carry it on, are governed by that object and have probable ground for their action. If the judge should perceive that there was no probable ground, the costs, as we have seen, are placed upon the applicants for the commission. But the party who may be unnecessarily harassed, without probable cause, has a still further remedy by action. Under these circumstances, we do not see any great hardship in an interlocutory order such as was made in the present case. At all events, there is no error in it for which we can reverse it. As we

[Clark's Case.]

take this view of the case, it is not necessary to consider the motion to quash the appeal, which was not made in time to entitle the party making it to be heard. But this decision is not to be understood as affirming the right to appeal from an order such as was made by the Common Pleas in this cause.

The decree of the Common Pleas is affirmed.