106   527
134   236

# Hassenplug's Appeal.

1. The Court of Common Pleas, in proceedings to determine whether or not a person is a lunatic, have the powers of a court of chancery, and, by virtue of the Act of April 16, 1849 (P. L. 663), have full power to decree that either party shall pay all the costs, or that the several parties interested shall pay the costs in such proportion as the justice of the case may require.

2. Such power exists without regard to the final result of the proceeding, whether it establishes lunacy or sanity, and extends not merely to the costs of the inquisition, but to all costs incurred in the proceeding until final judgment.

3. Said Act of 1849, being remedial, should be construed liberally, so as to effect the legislative intent apparent therein.

4. Upon the petition of A, alleging that B was *non compos mentis*, the court awarded a commission in the nature of a writ *de lunatico inquirendo*, and the return found B to be a lunatic. B traversed the return, and obtained a verdict and judgment that he was sane. Subsequently the court, being of opinion that the original application of A. was not without probable cause, imposed all the costs of the proceeding upon B, who appealed from said order.

*Held*, that the court had ample power to make and enforce such order, which was therefore affirmed.

May 7, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Union county :* Of July Term, 1883, No. 98.

Upon the petition of William H. Hassenplug, setting forth that G. H. Hassenplug, his brother, was a lunatic, the court ordered that a commission issue in the nature of a writ *de lunatico inquirendo.* The return of the commission found the lunacy as averred. A traverse was filed, and the issue was tried before a jury, who found in favor of the defendant, and judgment was entered on the verdict. In the meantime a committee had been appointed, and various proceedings, by rules and attachments, &c., had been taken, with the object of obtaining possession by the committee of the defendant's property, by reason whereof the costs of the proceeding amounted to about the sum of $400.

After entry of judgment on the verdict, in favor of defendant, the court, on motion of the petitioner, granted a rule on the defendant to show cause why he should not pay the costs in the case.

The court (BUCHER, P. J.), after argument on said rule, made the following order:

"And now, April 19, 1883, the court being of the opinion that the relator had probable cause for the institution of the proceedings in lunacy, the rule is made absolute, and the defendant is ordered to pay the costs of the commonwealth, upon the authority of Clark's Case, 10 Harris, 466."

The defendant took this appeal, assigning for error the above order imposing the costs upon him.

*J. Thompson Baker* and *Samuel H. Orwig*, for the appellant. —It would be an oppressive law which, besides permitting a citizen to be harassed, according to legal forms, by protracted efforts to make him insane, and to obtain possession of his property, should, after a jury has vindicated his sanity, impose upon him the costs of the proceeding! We do not believe there is any such law in Pennsylvania.. Clark's Case, 10 Har-

ris, 466, upon the authority of which the learned court below ruled the case, is not a parallel case. The inquisition and return in case *was not traversed*, and the Act of April 16th, 1849, was applicable thereto; it was made to meet just such a case. Without that Act the court would have been powerless to impose the costs on Clark. The Act of June 13, 1836, sec. 12 and cognate sections, relate only to costs of the inquisition, and not to costs after traverse upon untrue inquisition. The Acts of 1836 and of April 16, 1849, are *in pari materia*, and may be construed in harmony, the Act of 1849 effecting a remedy for the defects of sec. 9 of the Act of 1836, without repealing by implication its 12th section, which provides: " Every person aggrieved by any inquisition as aforesaid may *traverse* the same, upon or after the return of the same, and proceed to trial and have like *remedy and advantage* as in other cases of traverse upon untrue inquisition, or office found."

The rule in England in such cases, as to costs, was, " The king shall neither pay nor receive costs." Blackst. Comm., 400. This rule, where not altered by statute, applies to the commonwealth. The policy of our law appears from the Act of June 14, 1836 (P. L., 625), relating to costs in quo warranto, whereby, upon judgment being given against a private prosecutor, " the court shall also give judgment that the defendant recover his costs of such relator." It has been held that, as the petitioner in lunacy proceedings " must bear his own costs if he fails in establishing the lunacy, that in general is sufficient to restrain the prosecution of an unfounded charge of lunacy." In re Giles, 11 Paige, 638.

*Dill* (*Beale* with him), for the appellee.—If the court has no power, either by statute or under its general equitable powers, to enforce payment of these costs out of the estate of the supposed lunatic, by whom shall they be paid? The relator is only liable, under the Act of 1836, when the judge shall certify there was not probable cause for the application, but the judge here has certified the contrary. It is a general principle that a party prosecuting an inquisition of lunacy in good faith will not be condemned in costs. Wier *v.* Myers, 10 Casey, 377; White's Case, 2 C. E. Green, 274. And that our Act of 1849 gives ample statutory power to the court is clearly ruled in Clark's Case, 10 Harris, 468. See also Black's Case, 6 Harris, 434; In re Agar-Ellis. L. R., 10 Ch. 75; 23 W. R., 377.

Mr. Justice TRUNKEY delivered the opinion of the court, October 6, 1884.

In Clark's Case, 22 Pa. St., 466, it was said that in Penn-

sylvania the courts have the powers of a court of chancery in proceedings to determine whether or not a person is a lunatic, and may do justice in the disposition of costs.    And that under the Act of 1849, P. L., 663, a decree may be made that either party shall pay all the costs, or that the parties interested shall pay the costs in such proportions as the justice of the case may require.    There, after a jury before the commissioner had disagreed, and before another jury had been called, an interlocutory decree was made that the alleged lunatic pay all the costs then accrued, and it was held that such decree was properly made because the power to make it was included in the power to dispose of the costs in the final decree.

Section 9 of the Act of 1836, P. L., 595, required the judge holding an inquisition, in case the party with respect to whom the application was made shall not be found a lunatic, and the judge believed there was not probable cause for the application, to so certify, and thereupon the party who made the application shall pay all the costs.    The purpose or defects of that section need not be remarked.    Nor need we note the English rule that had been followed by the courts prior to the vesting in them chancery powers, under which, in case the party was found a lunatic, the costs were usually paid out of his estate; and if not so found, neither he nor the person who made the application could recover costs.

The Act of 1849 expressly makes it the duty of the Court of Common Pleas out of which any commission in the nature of a writ *de lunatico inquirendo* shall issue, to decide and direct who shall pay all the costs attendant upon the issuing and execution of such commission, or to apportion such costs as the justice of the case may require.    That Act is remedial, and ought not to be construed so strictly as in a measure to defeat the object of the legislature.    It put an end to the question as to the power and duty of the court to make a decree respecting costs, whether or not the party alleged to be insane was so found.    It is said by the appellant that the Act relates only to the costs accrued at the return of the commission. But it is the right of a party found to be a lunatic to traverse the inquisition, and the end of the proceeding founded on the writ is not reached till judgment on the traverse.    The costs accruing until the final judgment are attendant, that is, consequential, or immediately following, upon the issuing and execution of the commission.    There may be a distinction between costs accrued before the return of the commission and those which accrued after, but we are of opinion the intendment of the statute includes all costs until final judgment in the proceeding.

The decree is unassailed for any cause shown in this court,

save the want of power to make it, and therefore no reason appears for reversal.

> Decree affirmed, and appeal dismissed at costs of the appellant.