## ESTATE OF ELIZA EBLING, A LUNATIC.

134　227
170　100
134　　227
20 SC 299

APPEAL BY G. W. BARTHOLOMEW, EXR., FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 28, 1890—Decided April 21, 1890.
[To be reported.]

1. The death of a person, pending proceedings to have him adjudged a lunatic and before inquisition found, puts an end to the proceedings, so that no inquisition can thereafter be taken, and no decree made by the court upon the merits of the case, the proceeding being purely personal and necessarily terminating at the person's death.

Statement of Facts.

2. Upon the death of the alleged lunatic, pending an inquiry before a commissioner and jury, under the act of June 13, 1836, P. L. 592, it is their duty to report the fact of such death, and they may report also what was done by them prior thereto; but they have no power to report as to the fact of lunacy, or the existence of probable cause for the proceeding.

3. The ascertainment of probable cause for the proceeding, with reference to the question of liability for costs under § 9, act of June 13, 1836, P. L. 595, is a special function to be exercised by the judge holding the inquisition, or, by parity of reasoning, by the commissioner performing the same duty, but only after a finding that the person is not a lunatic.

4. Section 2, act of April 16, 1849, P. L. 663, making it the duty of the Court of Common Pleas to direct who shall pay the costs attendant upon the issuing and execution of a commission de lunatico inquirendo, does not confer upon the court the power to make an order on the executor of an alleged lunatic, dying before inquisition found, for the payment of such costs.

5. If an inquisition has been found before death, the jurisdiction of the Court of Common Pleas attaches to the lunatic's estate, but in the absence of such inquisition, after the lunatic's death the Orphans' Court has exclusive jurisdiction over his estate: Freeman's App., 22 W. N. 173; Clark's Case, 22 Pa. 466; Hassenplug's App., 106 Pa. 527; Yaple v. Titus, 41 Pa. 195, distinguished.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 182 July Term 1889, Sup. Ct.; court below, No. 828 June Term 1888, C. P. No. 2.

On August 7, 1888, Sarah L. Dolde presented to the court below her petition setting forth that Eliza Ebling was and for two years and upwards had been so far deprived of her reason and understanding that she was rendered altogether unfit and unable to govern herself or to manage her affairs, as appeared by affidavits annexed to the petition, and that the petitioner was a blood relation of said Eliza Ebling; praying for a commission de lunatico inquirendo, etc. Thereupon the court appointed *Mr. Isaac D. Yocum* commissioner, and issued to him a commission as prayed for, with an order directing the giving of certain notices of the time and place of its execution. The commission was originally returnable on the first Monday of October, 1888, but by subsequent orders the time for reporting

was extended, the last of such orders fixing therefor the first Monday of September, 1889.

On July 2, 1889, the commissioner, and a jury summoned under his direction, filed their report, which, after reciting the giving of notices in accordance with the order of the court; the qualifying of the jury; the holding of several meetings at which testimony on behalf of the petitioner was taken; the closing of the petitioner's case on December 20, 1888; a meeting on December 27, 1888, at which testimony was submitted on behalf of the alleged lunatic; two adjournments to days certain on account of the illness of Mr. Josephs, one of the jurors, and a subsequent adjournment, for the same cause, to meet at the call of the commissioner, proceeded as follows:

" Mr. Joseph's illness continued, and before he recovered sufficiently to call the jury together again, Eliza Ebling, the alleged lunatic, died, to wit, on March 5, 1889, before the testimony in her behalf had been closed.

" All the evidence offered in this case is hereto attached.

" The jurors further report, that they with the commissioner, visited the alleged lunatic, Eliza Ebling, on the 22d day of October, 1888; she was then boarding with George W. Bartholomew, at his residence No. 1530 North Eighth street, Philadelphia. They found her confined to her bed suffering from total paralysis of her lower extremities.

" The jurors further report that, from an interview with Eliza Ebling, and from all the testimony offered in this case, they are of the opinion that she, the said Eliza Ebling, was at the time of the filing of the petition in this case, to wit, August 7, 1888, and so remained up to the time of her death, so far deprived of her reason and understanding as to render her altogether unfit and unable to govern herself or to manage her affairs, and that there was therefore the greatest probable cause for the filing of this petition, and the commencement of the proceedings in this case.

" The jurors held sixteen meetings in all, as follows: . . . . "

Along with the report was filed a bill of costs, amounting to $797. In this bill, the services of the jurors were charged for at the rate of $2.50 per day.

On July 3, 1889, the commissioner presented a petition reciting his appointment, the report of himself and the jury, and

the filing of the bill of costs; and, averring that Eliza Ebling died seised of real and personal estate amounting to at least $15,000, and that letters testamentary upon her estate were duly issued to one George W. Bartholomew, prayed, on his own behalf, and on behalf of the others interested in said bill of costs, for a rule on George W. Bartholomew, executor, etc., to show cause why an order should not be made on him for the payment of said costs. Thereupon the court granted the rule prayed for.

On July 5, 1889, George W. Bartholomew, executor, etc., appeared, and moved the court to strike off the report of the commissioner and jury, for the reasons, inter alia, that, as appeared by the record, Eliza Ebling died before the testimony on her behalf had been closed, and nearly four months before the filing of the report; that the commissioner and jury had no power, under such circumstances, to make any finding in lunacy, and that there was no probable cause for the issuing of the commission. Upon this motion, the court granted a rule to show cause why the report should not be stricken off.

Upon the return of these rules, and after hearing, the court, FELL, J., without opinion filed, entered a decree discharging the rule to strike off,[1] and a further decree as follows: "And now to wit, July 18, 1889, the bill of costs as filed in the above is approved, and the court do further order and decree that George W. Bartholomew, executor of the estate of Eliza Ebling, deceased, pay said bill of costs out of funds that may be in his hands belonging to said estate." [2]

Thereupon the executor took this appeal, specifying that the court erred:

1. In refusing to strike off the report of the commissioner and jury.[1]

2. In entering the decree for the payment of costs.[2]

*Mr. F. Carroll Brewster* (with him *Mr. Horn R. Kneass*), for the appellant:

The inquisition returned does not comply with the requirements of the law. It omits to report a single one of the matters of inquiry prescribed by § 3, act of June 13, 1836, P. L. 592. Even the finding that Eliza Ebling was "deprived of her reason and understanding," etc., is insufficient, not being

a finding of lunacy, as that word is defined by § 67 of the act
of 1836 : Beaumont's Case, 1 Wh. 52; Gaul's Est., 7 W. N.
522.   By § 11, act of 1836, jurors are allowed one dollar per
day, and for this reason the order to pay the bill of costs, in
which $2.50 per day was claimed, was erroneous.   But the
effect of the alleged lunatic's death, prior to the return of the
inquisition and before the testimony was closed, was to super-.
sede the proceedings, there being no statutory authority to
inquire in this manner into the lunacy of a deceased person,
express legislation being necessary to make a personal action
survive the death of the defendant : Shelford on Lunacy, 22 ;
In re Way, 3 DeG., F. & J. 175.

*Mr. Isaac D. Yocum*, P. P., and *Mr. George W. Hull* (with
them *Mr. George McGowan*), for the appellees :
The report of the commissioner and jury was not intended
as a final finding, nor can it be so construed.   It was intended
simply as a certificate of probable cause, enabling the court to
determine the liability for costs, under § 9, act of June 13,
1836, P. L. 592, and § 2, act of April 16, 1849, P. L. 663.   The
executor was properly ordered to pay the costs by the Court
of Common Pleas : Freeman's App., 22 W. N. 173; Ex parte
Russell, 1 C. P. Rep. 34; Dickinson's Case, 1 W. N. 96; Clark's
Case, 22 Pa. 466; Hassenplug's App., 106 Pa. 527 ; Wier v.
Myers, 34 Pa. 378.   The decree is against the estate of the
alleged lunatic, and, though jurisdiction over her person was
necessarily terminated by her death, jurisdiction over her es-
tate was not : Yaple v. Titus, 41 Pa. 202.   The petitioner
having proceeded in good faith and upon probable cause, it
would be error to impose the costs upon her : Weaver's Case,
116 Pa. 232; Gile's Case, 11 Paige 638 ; White's Case, 2 C. E.
Green 278; Beames on Costs, 335.

OPINION, MR. JUSTICE GREEN :
This was a proceeding in lunacy upon the person of Eliza
Ebling.   A commissioner was appointed, and a jury was sum-
moned and sworn, to inquire into the sanity of the alleged
lunatic.   Several meetings were held by the commissioner and
jury, and the testimony of several witnesses was heard.   In
all, sixteen meetings were held, but a number of these were

Opinion of the Court.

mere adjourned meetings. The testimony for the petitioner was closed December 20, 1888, and on December 27th, following, some testimony was offered on behalf of the alleged lunatic. The meeting was then adjourned, on account of the illness of a juror, to January 4, 1889, and again to January 29th, for the same cause, when, on account of the continued illness of the juror, the hearing was adjourned to meet at the call of the commissioner. Before any other meeting was held, to wit, on March 5, 1889, Eliza Ebling died, the testimony on her behalf not having been closed. No further meeting was held until June 27, 1889, when a report was prepared and signed, and the same was filed on July 2, 1889. On July 5, 1889, the appellant, as executor of Eliza Ebling, deceased, filed a petition asking for a rule to show cause why the report of the commissioner should not be stricken off. The rule was granted, but the court refused to strike off the report, and, on July 18, 1889, made an order approving a bill of costs which had been filed on July 2d, in connection with a petition of the commissioner for a rule on the executor to show cause why an order should not be made on him to pay the costs, fees, and expenses of the proceeding as set forth in the bill. The court made the order prayed for, and thereupon the present appeal was taken by the executor. Two errors are assigned; one to the refusal of the court to strike off the report of the commissioner and jury, and the other to the order approving the bill of costs, and directing the executor to pay it.

There can be no doubt that the death of the alleged lunatic pending proceedings, and before any inquisition found, put an instant end to any further proceedings. After that, no inquisition could be taken, and no decree could be made by the court on the question of the alleged lunacy. The proceeding was a purely personal one, and it necessarily terminated on the death of the party. In Shelford on Lunacy, 22, it is said: "If a lunatic die before office found, no inquisition can be taken; for the commissioners and jury may demand inspection, and the property is vested in other persons, so that no right accrues to the king." The authority cited is in Beverley's Case, 4 Coke 127 a, which upon examination confirms the citation. Upon this authority, and upon manifest principles, we have no hesitancy in saying that the death of the alleged

Opinion of the Court.

lunatic before inquisition found terminated the proceeding, so that no findings could be made by the commissioner and jury, and no decree by the court upon the merits of the case.

But the court was entitled to know, and it was the duty of the commissioner and jury to make known to the court, the fact of Eliza Ebling's death. They were officers of the court, and ought to inform the court of the reason for the suspension of their further proceedings. We are not prepared to say that it was not fairly proper for them also to report what had been done before them up to the time of the death of the party. In fact, such information would be necessary in order that the court might know whether any inquisition had been found at the time of her death. But, with the communication of that information, their duties and their powers ceased. They proceeded further, and made a finding that, in their opinion, the alleged lunatic was so far deprived of her reason and understanding as to render her altogether unfit and unable to govern herself or manage her affairs, and that there was probable cause for the filing of the petition and commencement of the proceedings.

They did not undertake to make the findings required by the law as to the fact of lunacy, the property belonging to her, who were her next of kin, etc., and the report was not used or offered for any such purpose. They probably considered it was necessary to inform the court on the question of probable cause, and added that to their report, because the court has certain powers over the question of costs in causes of this character, even where the question of lunacy is found in favor of the alleged lunatic. But in this they were in error. The ascertainment of probable cause for a proceeding in lunacy is a special function of the court, to be exercised after a finding that the party is not a lunatic, and, of course, there was no such finding in this case. This duty of the court arises under § 9, act of June 13, 1836, P. L. 595, which provides as follows: " If, upon such inquisition, it shall be found that the party with respect to whom the application was made is not a lunatic or habitual drunkard, and it shall appear to the judge holding such inquisition that there was not probable cause for such application, he shall certify the same on such inquisition; and thereupon the party by whom such application was made shall

be liable for the costs of the proceeding, in like manner as prosecutors in criminal cases, when directed by the jury to pay the costs of prosecution." It will be seen that it is the judge holding the inquisition, and, by parity of reasoning, the commissioner performing the same duty, to make this certificate; but, as it is only authorized after a finding that the party was not a lunatic, it has no place in such a report as this. We can, however, treat that part of the report as surplusage, and disregard it as the basis of any further action of the court.

The serious and practical question of this case, however, is the question of costs, and the order directing them to be paid by the executor. It arises under our act of April 16, 1849, P. L. 663, which confers very extensive authority upon the court in these cases. It is in these words: "It shall be the duty of the Court of Common Pleas out of which any commission in the nature of a writ de lunatico inquirendo, to inquire into the lunacy or habitual drunkenness of any person within this commonwealth, shall hereafter issue, to decide and direct who shall pay all costs attendant upon the issuing and execution of said commission, or to apportion said costs, and the payment of them, among the parties interested, in such proportion as the justice of the case may require, and to order and decree payment accordingly." It must be admitted that the language of this act is very broad; that it certainly confers authority over the whole question of costs, upon the Common Pleas, in these cases; that it is subject to no limitations as to the condition of the proceedings; and that it makes no distinction in favor of persons deceased. Yet we think it must be considered as subject to the perfectly well-established rules which prevail in all other cases, and which are fundamental in our entire system of jurisprudence. That a personal action which dies with the person is absolutely determined by the death of the party before judgment, that no decree can be rendered against one who is deceased where the action or proceeding does not survive, and that the Orphans' Court is the exclusive tribunal clothed with authority to distribute the estates of deceased persons, are doctrines which are so deeply seated in our law, and of such universal application and so essential to the just administration of the rights and property of citizens, that we cannot disregard them except in the presence of an imperious

necessity, must be assumed. Does such a necessity exist in this case? We think not. The precise question does not seem to have been before us in any case heretofore. Upon the plain reading of the act, it is clearly applicable to all persons who are living and subject to the jurisdiction of the court. As to them, it matters not what the findings of the inquest are, nor what is the state of the record. The power of the court is supreme, and it may determine and apportion the costs in any manner it may see fit, subject only to the limitation that it shall be "as the justice of the case may require;" and it shall be exercised in all cases, and embrace all the costs arising out of the proceeding. All of this authority, however, can be exercised without the abrogation of any of the fundamental principles heretofore mentioned. The power to impose costs exists in all proceedings, whether at common law or in equity, or in cases not according to the course of the common law; but it has not been supposed that it can be exercised by a direct order against a dead person, nor against his estate, except by methods provided for introducing his representatives. We hold, therefore, that the language of the act under consideration was not intended to change existing fundamental principles, but to be applicable, in conformity with them, in all cases which are embraced within the terms of the act.

Applying these principles to the order made in this case, we are obliged to hold that the court below had no power to make any order upon the executor of the alleged lunatic to pay the costs of this proceeding. The executor was no party to the proceeding, and there is no provision of the law for making him a party. The Court of Common Pleas cannot order the appropriation of the decedent's estate to the payment of these costs, because such appropriation is the exclusive function of the Orphans' Court. The Court of Common Pleas has no means of ascertaining the particulars of a decedent's estate, nor of determining the various claims upon it, nor of adjudging the debts due by the decedent. After the death of an alleged lunatic, that court has no jurisdiction or control over his person, and can make no decree, which can be enforced against his property, without an inquisition found. If an inquisition has been found before death, the jurisdiction attaches, and orders may be made. This distinction reconciles all the cases

Opinion of the Court.

cited by the appellee. Thus in Freeman's App., 22 W. N. 173, there had been an inquisition and adjudication of lunacy, and a committee had been appointed who had taken the lunatic's estate into custody, and had settled his accounts. In the Case of Russell, 1 C. P. Rep. 34, which was a Common Pleas decision by our Brother McCollum, there had been an inquisition found and filed before the party's death, and on that ground the power of the court was sustained. In Clark's Case, 22 Pa. 466, and Dickinson's Case, 1 W. N. 96, and Hassenplug's App., 106 Pa. 527, the alleged lunatic was living, and inquisition had been found. In Yaple v. Titus, 41 Pa. 195, inquisition was found, and a committee appointed, who had taken possession of the estate, and was administering it, before the death of the lunatic. After inquisition found, the Court of Common Pleas has acquired jurisdiction of the estate of the alleged lunatic, and may make orders and decrees respecting its control and disposition. They may impose costs upon it, even before final adjudication, and may appoint a committee, either of the person or estate or both : § 14, act of June 13, 1836, P. L. 595. The fact of a traverse does not take away this jurisdiction. But there is no power to do this before inquisition found, and, of course, there is no power to substitute the executor or administrator, in case of the death of the party before inquisition. This being so, we can discover no basis of authority for the court to make any order or decree against the personal representative, for the payment of costs, or for any other purpose. At the moment of the death of the alleged lunatic, all of his property immediately vests in other persons, and, unless jurisdiction and control of it has been acquired by the Court of Common Pleas prior to his death, it can never be acquired. These views require us to reverse the decree of the court below approving of the bill of costs filed and directing it to be paid by the appellant.

The decree of the court below is reversed, and petition dismissed, at the cost of the appellee.